IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

SUSAN L. ARNSPERGER,                    Case No. 6:11-cv-06293-AA
a single woman,                              OPINION AND ORDER

            Plaintiff,

       v.

THE BOEING COMPANY EMPLOYEE
BENEFIT PLAN, the Plan; AETNA
LIFE INSURANCE COMPANY, a
foreign corporation,

            Defendants.
_____

Aaron I. Engle
Frederick P. Langer
Nelson Langer Engle, PLLC
1015 NE 113th Street
Seattle, WA 98125
       Attorneys for plaintiff

Sarah N. Turner
Donald J. Verfurth
Gordon & Rees, LLP
701 Fifth Ave
Suite 2100
Seattle, WA 98104
       Attorneys for defendants

Page 1 - OPINION AND ORDER

AIKEN, Chief Judge:

Susan Arnsperger ("plaintiff") filed this action under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1132(a)(1)(B), against Aetna Life Insurance Company ("Aetna"). Plaintiff alleges that Aetna wrongfully denied her claim for long-term disability benefits (the "benefits claim"). Pursuant to <u>Rorabaugh v. Cont'l Cas. Co.</u>, 321 Fed. Appx. 708 (9th Cir. 2009), the parties have jointly filed a stipulated motion for de novo review of Arnsperger' benefits claim.

## BACKGROUND

Plaintiff was diagnosed with scoliosis at age eight, and underwent her first surgery at age ten. AETNA000977. In 2005, plaintiff began working in Boeing's Law Department as an Office Administrator. Pl.'s Opening Br. at 2. In 2006, she was promoted to Executive Office Administrator, working directly for Steven Horton, Assistant General Counsel. <u>Id.</u>

Plaintiff was able to function normally until late 2006, when she received an MRI of her cervical spine showing moderate degenerative disc disease, neuroforaminal stenosis, spondylosis and disc protrusion at C5-6. AETNA000685. She received a lumbar MRI in January 2007, which showed multi-level moderate to severe canal narrowing at L2-3 and L3-4, and disc bulges which appeared to contact the left-side nerve roots. AETNA000687. She was given a series of injections, and ultimately underwent decompression surgery in mid-2007, which resulted in an extension of her L2

Page 2 - OPINION AND ORDER

fusion down to L5. AETNA000681; AETNA000780. She was subsequently released to return to work in September 2007. AETNA000786.

Plaintiff continued to experience problems with her back, receiving epidural steroid and trigger point injections in April and May 2008. AETNA 000835-39, AETNA000844-46. Plaintiff continued to complain of pain, recorded in January 2009 as being diskogenic and myofascial in nature. AETNA000940-42. As a result, she continue to receive epidural steroid and trigger point injections from May 2009, through September 2009. AETNA0001823-25; AETNA000955. Plaintiff submitted her short term disability ("STD") claim on September 21, 2009.   It was accepted by Aetna, the claim administrator, and paid by Boeing, plaintiff's employer.   On October 28, 2009, plaintiff had her third major back surgery when she "underwent a left-sided C5-6 and C6-7 foraminotomy." AETNA001089; AETNA001110-12.

## STANDARD

Plaintiff's complaint requests an award of benefits under the ERISA plan with pre-judgment interest on any monetary award rendered in her favor, declaratory judgment to enforce Aetna's continuing obligation to pay benefits pursuant to the Long Term Disability ("LTD") policy, and for her costs incurred by bringing this action. Compl. at 6. This Court construes this as a claim pursuant to ERISA's civil enforcement provision.  See 29 U.S.C. § 1132(a)(1)(B).  Section 1132 provides that a "civil action may be brought . . . by a participant . . . to recover benefits due to him under the terms of his plan [or] to enforce his rights under

Page 3 - OPINION AND ORDER

the terms of the plan." Id. "[A] denial of benefits challenged under § 1132(a)(1)(B) is to be reviewed under a de novo standard unless the benefit plan gives the administrator . . . discretionary authority to determine eligibility for benefits." Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 115 (1989); Opeta v. NW Airlines Pension Plan for Contract Emps., 484 F.3d 1211, 1217 (9th Cir. 2007).

Where, as here, the plan does not grant such discretionary authority, "'[t]he court simply proceeds to evaluate whether the plan administrator correctly or incorrectly denied benefits.'" Opeta, 484 F.3d at 1217 (quoting Abatie v. Alta Health & Life Ins. Co., 458 F.3d 955, 963 (9th Cir. 2006)). The party seeking to recover benefits under the terms of a LTD plan bears the burden of proving his entitlement to such benefits. Muniz v. Amec Const. Mgmt., Inc., 623 F.3d 1290, 1294 (9th Cir. 2010).

Moreover, plaintiff bears the burden of proving by a preponderance of evidence that she is entitled to coverage under the Plan's terms. Id. De novo review requires the court to conduct a "broad review, considering anew both the legal and factual aspects of [the claim]." Thomas v. Oregon Fruit Prods. Co., 228 F.3d 991, 995 (9th Cir. 2000). During this review, the "administrator's decision is accorded no deference or presumption of correctness." Kearney v. Standard Ins. Co., 175 F.3d 1084, 1094-96 (9th Cir.), cert. den., 528 U.S. 964 (1999)..

## DISCUSSION

Plaintiff contends that Aetna's denial of her LTD claim was

Page 4 - OPINION AND ORDER

wrongful, as it was made against the weight of evidence in the claim file. Compl. at 5.

A.   <u>Definition of Disability Under the Plan</u>

Plaintiff submitted her STD claim on September 21, 2009, and it was accepted by the claim administrator, Aetna, although paid by her employer, Boeing. AETNA000302. Her STD claim was re-approved several times by Aetna. Under the STD plan, after a 7-day waiting period, a claimant can receive up to 26 weeks of benefits paid by Boeing. After 26 weeks of STD benefits, a claimant is then eligible for LTD benefits paid by Aetna. AETNA002290. On April 26, 2010, plaintiff's STD claim was terminated by Aetna, and her benefits discontinued as of March 1, 2010. Also, in March 2010, plaintiff received a Notice of Award from the Social Security Administration ("SSA"). The SSA determined that plaintiff was unable to work in any capacity beginning September 11, 2009, and her benefits began March 2010. AETNA002042-47.

> The LTD plan provides that
>
> You become disabled as a result of accidental injury, illness, or a pregnancy-related condition and your accidental injury, illness, or pregnancy-related condition prevents you from performing the material duties of your own occupation (or other work the Company makes available) during the 26-week elimination period and first 24 months of benefits. After 24 months of benefits, you must be unable to work at any reasonable occupation for which you may be fitted by training, education, or experience.

AETNA002350.

The operative question for the court is whether plaintiff is able to perform the duties of her occupation or other work the company

makes available.

In order to properly address this question, it is necessary to first consider the medical evidence in the record.

B.  Summary of the Medical Evidence

The administrative record contains thousands of pages of medical reports relating to plaintiff's condition, treatment, and disability. Over a dozen medical providers examined or treated plaintiff, or reviewed her file. Because the record is so voluminous and for the sake of readability, the Court will first summarize plaintiff's disability and medical treatment, as it relates to her LTD claim.

Plaintiff has a life-long history of orthopedic problems relating to her spine, undergoing her first surgery to correct scoliosis at age 10. AETNA000783. However, the record suggests that she lacked any notable functional impairment as a result, and was able to perform her activities of daily living without issue. Plaintiff began working for Boeing in 2005, and was promoted to Executive Office Administrator in 2006. Pl.'s Opening Trial Br. at 2. Plaintiff contends that her condition began to markedly deteriorate around this time. Id. at 4.

An MRI performed in 2006 revealed moderate degenerative disc disease, neuroforaminal stenosis, spondylosis, and disc protrusions at C5-6. AETNA000685. Another MRI, in early 2007, revealed disc bulges at L2-3 and L3-4. AETNA000687. Due to these findings, plaintiff's previous fusion was extended from L2 to L5. AETNA000783. As a result of this fusion, plaintiff applied for and

Page 6 - OPINION AND ORDER

was granted STD benefits from Aetna. Def.'s Opening Trial Br. at 3.

Plaintiff eventually returned to work for a time after this surgery, but continued to experience pain. She continued to seek treatment during this time, and ultimately underwent a third major back surgery resulting in left-sided C5-6 and C6-7 foraminotomies. AETNA001089; AETNA001110-12; AETNA001127.

This surgery did not solve plaintiff's issues or pain. She received a caudal epidural steroid injection on May 12, 2009, performed by Dr. Thomas Yang on referral from Dr. Run Xue. AETNA001823-25. Plaintiff was evaluated by Dr. Becker, PhD, who performed an exhaustive Performance-Based Physical Capacities Evaluation. AETNA001504-14. Dr. Becker's objective findings documented plaintiff's disability and confirmed that the mechanical restrictions in her back and neck had evolved in such a fashion as to render her unemployable. Dr. Becker determined plaintiff was disabled due to two things: (1) physiologic or fatigue dysfunction; and (2) biomechanical restriction. AETNA001510-11.

Plaintiff alleges that she is functionally limited and unable to work because she has a damaged and nearly completely fused spine that causes her severe and constant pain and fatigue. Aetna acknowledges that plaintiff's spine is damaged, "the claimant is on chronic pain management" because she "failed interventional therapy as well as surgical treatment for scoliosis of the lumbar spine and foraminotomy in the cervical spine." AETNA002239. Aetna further notes that plaintiff has "restricted motion in both the cervical and lumroscral spine with localized tenderness." Id. Aetna,

Page 7 - OPINION AND ORDER

however, denied plaintiff's LTD claim alleging her spine condition does not cause "functional restrictions of such severity that would prevent her from performing the material duties of her own sedentary occupation" effective March 11, 2010.   AETNA002238.

    C.   <u>Analysis</u>

    This dispute revolves around Aetna's denial of plaintiff's LTD benefits claim. Eligibility under the Plan for LTD benefits contains four elements: 1) the claimant must be disabled as a result of accidental injury or illness; 2) as a result of such disability, the claimant must be earning 80 percent or less of their indexed pre-disability earnings; 3) during the first 30 months of disability, the claimant must be unable to perform the material duties of their own occupation or other appropriate work, regardless of availability; and 4) after the first 30 months of disability, the claimant must be unable to perform any reasonable occupation for which their training, education, or experience qualifies them, due to the accidental injury or illness. AETNA002238.

    The question is whether plaintiff has submitted sufficient evidence to prove that she is functionally limited to such an extent that she meets the definition of long term disability contained in the Plan. Based on the medical evidence contained in the record, I find that plaintiff is eligible for LTD benefits under the Plan.

    Plaintiff asserts that the medical records are sufficient to establish that she is functionally impaired and unable to work due

to severe and constant pain and fatigue. <u>See</u> Pl.'s Opening Trial Br. at 1. Aetna does not deny that plaintiff has a chronic medical condition. <u>See, e.g.,</u> AETNA002239. However, Aetna contends that the severity of plaintiff's condition does not prevent her from performing the material duties of her own occupation. Def.'s Opening Trial Br. at 1.

Plaintiff makes the following four arguments: 1) Aetna failed to credit objective evidence of biomechanical restriction and fatigue; 2) Aetna wrongfully dismissed her pain symptoms; 3) Aetna disregarded the opinions of her treating physicians, and failed to conduct a meaningful vocational review; and 4) Aetna failed to acknowledge plaintiff's award of SSA benefits. <u>See</u>, Pl.'s Opening Trial Br. at 25-35.

Plaintiff first argues that Aetna failed to credit objective evidence of biomechanical restriction and fatigue. <u>See</u> Pl's Opening Trial Br. at 25-28. Plaintiff alleges that "the evidence far exceeds the preponderance of the evidence standard." <u>Id.</u> at 25. I agree. Dr. Becker examined plaintiff on a total of four days, over two years, and he found substantial biomechanical restrictions and physiologic fatigue when she was exposed to sedentary work tasks. The October 2010 re-test data shows that plaintiff's lumbar deficits remained. AETNA001449. Dr. Becker's findings are also supported by the clinical records from her treating physicians. Dr. Becker further found that these lumbar deficits impact her ability to maintain a seated posture as evidenced by her hip flexion/seated testing. AETNA001471-72. Further, Dr. Becker

Page 9 - OPINION AND ORDER

subjected plaintiff to seated, sedentary work activities and found physiologic dysfunction precluding competitive work. AETNA00187-88 ("There is a worsening/decreasing tolerance over time. The profile of the performance identified by this examinee continues to show fatigue dysfunction and an inability to perform work functions in the customary competitive and predictable manner."). Finally, Dr. Becker's report documents serious cervical bio-mechanical dysfunction. AETNA001443-47. Dr. Becker's report is dispositive and credible.

Second, plaintiff alleges that Aetna wrongfully dismissed her pain symptoms. Pl.'s Opening Trial Br. at 28. Plaintiff alleges that, because pain is a condition that "does not lend itself easily to objective verification," her subjective reports must be considered and relied upon. Plaintiff asserts that Aetna may not disregard her subjective complaints, merely because it is difficult to measure them, in the absence of a "specific, clear, and convincing reason," such as a demonstrated lack of credibility. Pl.'s Opening Tr. Br. at 28. Here, there is no dispute that plaintiff has not been found by any treating or examining physician to lack credibility, and her complaints of pain are consistent. In addition, plaintiff points the court to several "character reference letters" submitted on plaintiff's behalf speaking to plaintiff's credibility and providing additional evidence of her physical decline. Aetna's failure to credit plaintiff's pain complaints are in error. The records show that plaintiff's treating providers unanimously agree that her reasons for pain are

Page 10 - OPINION AND ORDER

documented and reasonable.  She is on daily narcotic therapy. She has a tens unit, and she is candidate for a pain pump.  Finally, absent from the record is any evidence undermining plaintiff's credibility like surveillance undermining her claims, lack of patient compliance, or even concern from her treating doctors that she is malingering or motivated by secondary gain.

Plaintiff next alleges that Aetna improperly disregarded the opinions of her treating physicians, never actually examined plaintiff, and failed to conduct a meaningful vocational review. Pl.'s Opening Trial Br. at 29. It is well established that a plan administrator may not arbitrarily refuse to credit reliable evidence. Black & Decker Disability Plan v. Nord, 538 U.S. 822, 834 (2003). The Ninth Circuit holds that "a district court may, in conducting its independent evaluation of the evidence in the administrative record [on de novo review], take cognizance of the fact  .  .  .  that a given treating physician has a greater opportunity to know and observe the patient than a physician retained by the plan administrator." Ayers v. Life Ins. Co. of North America, 869 F.Supp.2d 1248 (D. Or. 2012)(internal citation omitted).  Aetna's reliance on Drs. Mendlessohn's and Pfaeffle's opinions is misplaced. Dr. Mendlessohn's conclusion that there is "no evidence of functional limitations" is inaccurate and not supported by the record.  Further, his belief that the absence of a "neurocompressive lesion" constitutes evidence that plaintiff is not disabled is similarly inaccurate, irrelevant and incomplete. Regarding Dr. Pfaeffle, he concludes that plaintiff is not disabled

from her own occupation because "there would be no limitations on the use of hands or fingers for repetitive motions or the feet for repetitive motions such as operating foot controls" and that she "should be capable of functioning in most jobs that involve sitting with a minimal of standing and walking." AETNA002160. Dr. Pfaeffle ignored Dr. Becker's testing that showed repetitive use of her hands resulted in significant physiologic fatigue. See AETNA 00187-88. Second, Dr. Pfaeffle's conclusion as to plaintiff's work capacity is not based on the record. Dr. Pfaeffle drew this conclusion without any physical examination, nor did he consider any of plaintiff's reports of pain. Finally, there is no evidence that Dr. Pfaeffle considered plaintiff's job requirements, or any realistic job requirements in a competitive work environment.

Plaintiff further notes in her brief that, although Aetna found her case to be "multifaceted and complex," it failed to obtain an "independent medical evaluation," ("IME") despite having authority under the Plan to do so. Pl.'s Opening Trial Br. at 31. The Plan specifically allows Aetna to examine participants. AETNA002350. Instead, Aetna commissioned record reviews. While the absence of such a report does not render a decision incorrect per se, it is a factor to be considered in the Court's overall assessment and may argue that Aetna's denial was not the result of a "deliberate, principled reasoning process." See Smith v. Continental Casualty Co., 450 F.3d 253, 263 (6th Cir. 2006) (peer review was inadequate because physician made credibility determinations without benefit of physical examination). "Whether

Page 12 - OPINION AND ORDER

a doctor has physically examined the claimant" is one factor the Court may consider in deciding whether Aetna acted arbitrarily and capriciously in giving greater weight to the opinion of its consulting physician.  Montour v. Hartford Life & Acc. Ins. Co., 588 F.3d 623, 634 (9th Cir. 2009).  In applying de novo review, Aetna's choice not to conduct an IME stands in contrast to the opinions of Drs. Williams, Xue, Falicov, Garr, Newton, Major, Klos, and Becker, all of whom actually examined plaintiff.  Further, Drs. Williams, Xue, Falicov, Garr, Newton, Major, and Klos each supported plaintiff's claims by submitting Attending Physician statements to Aetna under penalty of law.  Each of these physicians examined plaintiff, found her credible, and disabled.

Further, I find no evidence in the file that Aetna conducted a vocational review of plaintiff's claim.  The only references to a vocational review can be found at AETNA000317, AETNA000386, AETNA000388, and AETNA000396.  Plaintiff submitted the vocational report of Don Uslan, MA, a certified rehabilitation counselor and diplomat on the American Board of Disability Analysis. AETNA001938-1998.  Mr. Uslan interviewed and tested plaintiff over eight hours as part of his review. AETNA001942.  His report, along with Dr. Becker's Performance-Based Physical Capacities Evaluation ("PCE"), refutes Dr. Pfaeffle's findings that plaintiff would be capable of a seated job with minimal standing and walking because of her ability to use feet or hand controls.  AETNA001994.   Mr. Uslan concluded that plaintiff is "totally and completely disabled."  AETNA001995-96.  I find Mr. Uslan's report, as well as

Page 13 - OPINION AND ORDER

Dr. Becker's findings, compelling evidence in favor of plaintiff's claim.

Finally, plaintiff argues that Aetna failed to acknowledge her award of SSA benefits and further, improperly denied her LTD claim without evidence that her condition had improved. Plaintiff asserts that she received Social Security benefits, and that the SSA found her unable to work in any occupation. Pl.'s Opening Trial Br. at 34. SSA determinations, while not binding, are nonetheless persuasive evidence of disability. Salomaa v. Honda Long Term Disability Plan, 642 F.3d 666, 678 (9th Cir. 2011) (citing Montour, 588 F.3d at 635. This court has previously found the award of SSA benefits to be compelling evidence of disability, despite the fact that the award was not available to plan administrators at the time of their decision. Ayers, 869 F.Supp.2d at 1255. It is clear that based on plaintiff's SSA award, the SSA found her unable to work in any occupation.

Finally, plaintiff argues that Aetna improperly denied her LTD claim without medical evidence that her condition had improved. The Ninth Circuit holds that to justify a denial or termination decision, one must see an improvement in a claimant medical condition. Saffon v. Wells Fargo & Co. Long Term Disability Plan, 522 F.3d 863, 871 (9th Cir. 2008) ("[i]n order to find [a claimant] no longer disabled, one would expect the medical records to show improvement, not a lack of degeneration."). I find no evidence of any such improvement here.

Page 14 - OPINION AND ORDER

## CONCLUSION

Pursuant to a de novo review of the objective medical evidence contained in the record, and to the extent that such evidence is substantiated by clinical or diagnostic findings where appropriate, I find that plaintiff proves, by a preponderance of the evidence, that she is entitled to LTD coverage under the Plan by being functionally impaired to the extent that she is unable to perform her occupation.  Plaintiff is awarded LTD benefits, and her claim is remanded to Aetna for consideration of her entitlement to future benefits.  Further, the parties are instructed to confer over any attorney fee award and submit a proposed order  to the court.

IT IS SO ORDERED.

Dated this _____ day of ~~January~~ 2013.

_____
Ann Aiken
United States District Judge

Page 15 - OPINION AND ORDER